The Wood Hydraulic Hose Mining Company *vs.* King.

---

THE WOOD HYDRAULIC HOSE MINING COMPANY, plaintiff in error, *vs.* HARVEY KING, defendant in error.

(BY TWO JUDGES.)—1. Although a corporation, as such, can do no corporate act out of the limits of the State granting its charter, yet its agents and officers may bind it by contracts and engagements made in other States, and the minutes of its board of directors may be used as evidence of the acts of the board, even though the meetings of the board appear to have been held out of the State chartering the corporation.

2. It is a necessary incident of a mining corporation that it shall have power to contract and to bind itself to those dealing with it in matters within the intent of the charter, even though the charter contains no express grant or power to contract or make debts.

3. The directors of a corporation, unless expressly restrained either by the charter or the by-laws, may exercise the ordinary powers of the corporation.

4. A corporation which, through its directors, accepts the services of

The Wood Hydraulic Hose Mining Company *vs.* King.

another as treasurer, and ratifies and audits his accounts, in which a balance appears against the corporation, is bound by the admission, as a private person would be, under the same circumstances.

5. When the treasurer of a corporation, with the knowledge and consent of the directors, raised money for the use of the corporation, on his own credit, paying interest therefor above the legal rate, and his accounts, as treasurer, were audited and agreed to by the company, of extra interest appearing on the account, and a balance struck and agreed to as due the treasurer, a verdict of a jury for the balance, with legal interest from the date of the account, is not legal.

6. When the Judge who presided at the trial refuses to grant a new trial, on the ground that the verdict is contrary to the testimony, it must be a very strong case, indeed, to justify this Court in overruling the judgment. 12th February, 1872.

Corporation. Evidence. New Trial. Before Judge PAR-ROTT. Lumpkin Superior Court. September Term, 1871.

King brought assumpsit against said company, a corporate body of this State, for his services as its treasurer, and for money paid out by him for the company to carry on its mining operations in Georgia. The defenses were *non assumpsit* and that King had failed to perform his duty. King was examined by interrogatories and swore to the correctness of his account, and, to fortify his testimony as to money paid out by him for the company, he produced receipts signed by the parties to whom he paid the said money. He also attached to his answers copies of the action of the board of directors, held in their several meetings, in Boston, Massachusetts. He admitted that it required certain usury to make up the sum total of his account, but said that he had had to pay out usury for the company, with the knowledge and approbation of the directors, and that they submitted his accounts to an auditing committee, who reported that his claim was just and due, and that the directors adopted said report. The report copied from the minutes was also attached to his answers. He denied any and all facts going to make up the defense.

These interrogatories were objected to, upon the grounds

that there was higher evidence, in writing, of the facts therein stated; because King's authority to contract debts against the company must be shown by the records of the company; because the ·vouchers for money paid out were but the written statements of third persons, and because the company was'not bound by the action of its directors out of this State. The objections were overruled, and the testimony was read to the jury.

For the defendant there was evidence tending to show that King had failed to attend to his duty, and to set up a contract made by him as to taking pay on stock which King had denied, as stated by them.

1. Defendant's counsel requested the Court to charge the jury that if King, while treasurer of said company, transcended his authority in running the company in debt, by advancing the money himself, when he was authorized to sell stock to raise funds for the operations of the company, and negligently failed and fraudulently refused to put the stock of the company on the market, for that purpose, when requested so to do, and at the same time he could have sold the same at $5 per share, the defendant is not liable.

2. That if the jury were satisfied, from the evidence, that King, the plaintiff, whilst he was treasurer of the company, so managed to depreciate the value of the stock or designedly withheld the same from market, with a view to advance his own individual interest, and not the interest of the company, and he, at the same time, advanced money in order to keep the said stock from the market, then defendant is not liable, as the plaintiff cannot take advantage of his wrong.

3. That, if the jury are satisfied, from the evidence, that the evidence of the plaintiff does not correspond with the account of the plaintiff and sustain his claim, then you must find for the defendant.

The Court refused so to charge, but on the contrary charged the jury as set forth in the fifth, sixth, seventh, ninth and tenth grounds for a motion for new trial as hereafter set forth.

The Wood Hydraulic Hose Mining Company *vs.* King.

The jury returned a verdict for King for $10,651 63, principal, and $2,187 12, with cost of suit.   Whereupon counsel for defendant moved for a new trial on the following grounds:

1.  Because the Court erred in admitting the interrogatories of King as evidence.

2.  Because the Court erred in admitting in evidence the vouchers of Harvey King, treasurer of the said company, as evidence for the plaintiff to prove his individual account.

3.  Because the Court erred in admitting the report of a committee of stockholders, composed of E. F. Hodges, Joseph Murdock and N. H. Hand, made and reported at a meeting held in the city of Boston, and State of Massachusetts, on the 23d September, 1868.

4.  (Withdrawn by leave of the Court.)

5.  Because the jury found said verdict contrary to the charge of the Court in this:   1.  A corporation act and do business by its officers and agents, and these officers and agents derive their powers from the charter, by-laws and votes and resolutions of the corporation.   The mode by which corporations manifest their assent, make contracts, etc., is by their common seal or by vote of the company, or by contract, or agreements of their legal authorized agents.   If you are satisfied, from the evidence, that the corporation did not contract this debt by legal votes of the company, or by its legal authorized agents, the company is not liable, and therefore you must find for the company.   2.  In this, that the charter, by-laws and resolutions of the company must be strictly pursued by the officers and agents, and if they transcend their authority, the company defendant, is not liable.   3.  If you are satisfied, from the evidence, that the directors had no legal authority from the stockholders to borrow money through the treasurer, the action of directors authorizing the treasurer and plaintiff to borrow or advance the same, are void, and therefore plaintiff cannot protect himself under the action of the board of directors.   For when directors are made agents to do anything for the company, they must follow strictly the

charter, vote and resolutions giving them authority. 4. That the principal is bound by all the acts of his agent within scope of his authority. If the agent exceeds his authority the principal cannot ratify in part and repudiate in part. He must adopt either the whole or none. 5. If you are satisfied, from the evidence, that the defendant, by its legal agent, borrowed money, or the plaintiff advanced the money as agent of the defendant, then the defendant is liable; but if you are satisfied that the money was borrowed or advanced without authority from the principal, then the defendant is not liable. 6. That the principal may ratify the acts of agent; the ratification relates back to the act ratified, and takes effect as if originally authorized; so if you are satisfied, from evidence, that King, the plaintiff, was not legally authorized to borrow or advance the money, the defendant may afterwards ratify his acts, and the ratification may be express or implied from the acts or silence of the defendant, and the ratification once made, cannot be revoked. 7. That the usual mode of proceeding in bodies, or companies, where transactions of business are done through committees appointed, is that the subject-matter to be acted upon by the committee is referred to a committee, they, by its chairman, makes its report. The report is accepted or received by the body; then the report is adopted by the vote of the body; so if you are satisfied that the report of the committee in which the plaintiff's claim was audited was accepted and adopted by the vote of the company, defendant, then the defendant is liable, and you must find for the plaintiff; but, if you find the money was borrowed without authority, and the act was not ratified, you must find for the defendant. 8. The jury is only authorized to allow the plaintiff seven per cent. interest under the law on his claim, and you will, if you are satisfied the plaintiff is entitled to recover, calculate the interest on the amount due at the rate of seven per cent. 9. If you are satisfied, from the evidence, that the plaintiff has, by neglect or bad management, or the failure to do that which he was bound

to do in his office, damaged defendant in any certain amount, which must be ascertained by proof, then the defendant is entitled to recover of the plaintiff the amount in this action by way of recoupment.

6. Because the Court erred in refusing to charge the jury as requested as aforesaid.

7. Because the Court erred in charging the jury that "the eighth by-law of the company is, when the directors shall deem best, in their judgment, to make contracts, borrow money and run the company in debt by giving the company notes or otherwise," and if you are satisfied, from the evidence, that the directors acted according to the best of their judgment for the best interest of the company, and authorized the treasurer to borrow or advance the money, unless such action, or borrowing money, or contracting, was contrary to the charter," (it binds the company.)

8. Because the Court erred in charging the jury that if they were satisfied, from the evidence, that the plaintiff borrowed or advanced the money sued for while agent of the defendant, and that he had no authority to borrow or make such advance, that the company, defendant, may afterwards ratify said contract, either expressly or impliedly, by vote of the stockholders and directors, or by receiving the benefits of the money borrowed or advanced, made by said agent. If you find, from the evidence, that this is the case, the defendant is liable.

9. Because the jury erred in allowing the plaintiff twelve per cent. on his claim, contrary to the charge of the Court and contrary to the law.

10. Because the verdict is contrary to the evidence in the ca e, etc.

The Court refused a new trial and error is assigned on said grounds.

JOHN A. WIMPY, for plaintiff in error. Corporations must act within their charters: 2 Kent's Com., 299; 2 Cranch

R., 169; 13 Peter's R., 587; 2 Cowen's R., 675; 40 Ga. R. 619, 625. Mining companies have no implied authority to borrow money: 2 M. and N. R., 595; 2 Kent's Com., 298, (note.) They must act through their officers: A. and A. on Corp., sec. 231; 21 Howard's R., 365. How they appoint agents: A. and A. on Corp., sec., 283; 7 Cranch's R., 305. The treasurer could not bind the company: See Charter, Acts 1860, p. 132; 10th By-law; 7 Cranch's R., 305; 2 Barb. R., 107; 13 Peter's R., 287. Authority strictly construed: A. and A. on Corp., sec. 277. The province of directors: A. and A. on Corp., secs. 279, 280; 12 Wheat R., 113; 4 Mass. R., 596; 18 Ga., 411. If directors had authority to borrow money they could not delegate it to King: A. and A. on Corp., 277; 2 Kinnie's L. C., 492; 26 Wend. R., 485. General agents cannot run company in debt: 5 Denio's R., 283. A Georgia corporation cannot act in Massachucetts: A. and A. on Corp., sec. 1024; 27 Maine R., 507; 13 Peter's R., 288; 1 Black's, 286; 14 Ga. R., 341. Highest evidence must be produced: R. Code, sec. 3707; 12 Wheat R., 114, 115. Receipts of third persons are not admissible: 1 Gr. on Ev., secs. 212, 305.

GEORGE D. RICE; H. P. BELL, for defendant.

McCAY, Judge.

1. We recognize fully the doctrine that a corporation, as such, does not exist out of the jurisdiction which charters it: 1 Blatch. R., 628; 13 Pet. R., 588; 1 Black. U. S. R., 286. But, while this is true, nothing is now better settled than that a corporation may, by its agents, make contracts, sue and be sued, out of that jurisdiction which gave it birth. This State is full of agents, doing business for corporations of other States, and even for corporations of foreign States; and the authorities are now uniform that an agent of a corporation may exercise its powers out of the State incorporating it, provided there be nothing in the charter or in the

nature of its powers contravening it : 13 Pet. R., 588 ; 34 N. Y. R., 208. If one agent may thus act, there would seem to be no sensible reason why a board of agents may not do so. As the directors are only agents, the principle is broad enough to include them : See 35 Missouri R. 26 ; 27 Maine R. 509. The evidence is conclusive, that this corpotion was chartered by this State, and that it went into operation under the charter. Indeed, the fact that the president of the company appears and pleads to this declaration, admits the organization. Admitting that a stockholders' meeting could not be held out of the State, we must presume that the directors were chosen according to law, to-wit, in this State. The evidence is that several of them have been acting since 1861, and there is nothing in any of the pleas, or the evidence, showing (nor was it insisted on before the Court below) that the *directors* were not legally chosen We hold, therefore, that the records of the company, showing the *acts* of the directors, was good evidence to bind the company.

2. It is not necessary that the charter of a company should specify the powers granted to it, except so far as to specify the purposes of the company, and to *define* its franchises. Unless restrained by the charter, the grant of corporate powers carries with it the powers necessary to carry the franchise into effect. The power to contract — to incur debts, etc. — would seem to be incident to every corporation, unless the charter provides to the contrary : 5 Barbour R., 9 ; 25 Indiana R., 536 ; 1 Barb. R., 584. It would be impossible for this company to use its franchise without making contracts ; and, without doubt, it may make any contract within the scope of the object of the franchise.

3. The general rule is, that the directors of a corporation may do any act within the powers of the company, unless restrained by the by-laws, or by the special votes of the stockholders, at their meetings : Angel & Ames on Cor., section 231 ; and there is nothing in any of the by-laws,

42    SUPREME COURT OF GEORGIA.

The Wood Hydraulic Hose Mining Company vs. King.

offered in evidence, to limit the power of the directors. We are, therefore, of the opinion that the directors might lawfully authorize the treasurer to borrow money and to contract debts for the purposes of the charter.

4. But we are of the opinion that if a corporation accept the services of another, and actually receive and use monies advanced by him, it cannot set up want of authority in its charter to make the contract. It would be outrageously unjust to permit a corporation to thus practice a fraud upon one dealing with it. If a corporation undertake to exercise a franchise not granted by its charter, there is strong authority for holding the act void and permitting even the corporation to repudiate it. Since, as it is said, the *act* is *illegal,* contrary to public policy. But where the objection is not that the corporation has undertaken to exercise a franchise not granted to it, but that its officers or agents have exceeded, not the powers of the corporation, but their own powers as agents, a different rule obtains. In such cases they stand like other principals employing agents, and if they knowingly receive the fruits of the excessive exercise of authority by their agents, they are held to have ratified the act. The proof here is abundant that Mr. King advanced the money and gave his services under his undertaking with and by the consent of the directors, and the proof is equally strong that the company has received and used both his services and his money.

5. We see no illegality in allowing the credit to Mr. King of the extra interest he had to pay to raise the money. He was acting under the orders and by the consent of the directors, and the facts of the case show that this extra interest is not a charge for the use of Mr. King's money, but a mere return to him of money paid out by him for the use of the company. This account was audited by a committee, these items recognized, and we see no reason to disturb the account stated and agreed upon by both parties.

6. Without doubt there is a conflict in the evidence, and we are not prepared to say that the evidence does not pre-

ponderate somewhat in favor of the company, on at least two of the issues made in this case, to-wit: whether the $1,500 was an advance by way of loan, or whether it was in part payment of stock, to be taken by Mr. King; and, second, whether Mr. King did not specifically damage the company by failing to put the stock upon the market. But as there was evidence on both sides upon these issues, we are not disposed to disturb the verdict, sustained as it is by the refusal of the Judge who tried the case to grant a new trial. We think the jury might well have felt themselves justified in considering the report of the auditing committee as settling these questions in favor of Mr. King, and the evidence of the present president of the company is an admission of the truth of Mr. King's claim as it stands.

We do not, therefore, think this is such a case as demands our interference. It requires a very strong case to justify this Court to overturn the verdict of a jury with the judgment of the Court sustaining, in a question of evidence.

Judgment affirmed.